# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| CITIMORTGAGE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:12-CV-00246-CDP |
| ) | |
| CHICAGO BANCORP, INC., ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

Chicago Bancorp has failed to comply with the Court's March 21, 2013 Order compelling Chicago Bancorp to provide certain Rule 30(b)(6) testimony relating to its dissolution and transfer of assets. Chicago Bancorp was required, but failed, to produce a witness suitably prepared to testify on these topics.

Chicago Bancorp produced its founder and president, Stephen Calk, who testified that:

- he did nothing to prepare for the deposition;

- he did not know why he was there;

- he did not review the topics on which Chicago Bancorp designated him to testify;

- he was not sure if he was aware of the Court Order compelling testimony on the topics;

- he did not recall who had the idea to dissolve Chicago Bancorp;

- he did not recall what notices of dissolution were published;

- he did not recall when—from 2010 to December 28, 2012 (the date Chicago Bancorp executed Articles of Dissolution)—Chicago Bancorp made the decision to dissolve;

- he did not know the date Chicago Bancorp was dissolved; and

- he believed other company personnel or the company accountant had certain relevant information on the topics for which he was designated, but he did not.

1

The Court should sanction Defendant for its failure to comply with the Court's March 21, 2013 Order.

## I. APPLICABLE RULES AND DISCOVERY OBLIGATIONS

Under Federal Rule of Civil Procedure 30(b)(6), a party is entitled to seek testimony from the opposing party's corporate designee. A party deposed under Rule 30(b)(6) is obligated to produce a deponent who has been suitably prepared to respond to questioning within the scope of inquiry. **Buehrle v. City of O'Fallon**, No. 4:10-CV-509-AGF, 2011 WL 529922, (E.D. Mo. Feb. 8, 2011). "To this end, the responding party must make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter." **Dwelly v. Yamaha Motor Corp.**, 214 F.R.D. 537, 540 (D. Minn. 2003) (internal citations omitted). *See also, e.g.*, **Brazos River Auth. v. GE Ionics, Inc.**, 469 F.3d 416, 433 (5th Cir. 2006) ("[T]he duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources.").

Under Rule 37(a), a party may move to compel Rule 30(b)(6) testimony if the opposing party refuses to provide it. If the Court grants the motion to compel, and "[i]f a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey" the order, "the court where the action is pending may issue further just orders"—*i.e.*, the Court may impose "sanctions." Fed. R. Civ. P. 37(b)(2)(A).

## II. BACKGROUND

In the parties' Agreement, Chicago Bancorp made the ongoing representations and warranties, among others, that "it is solvent" and that "it will immediately notify CMI if… [Chicago Bancorp]… has incurred or is likely to incur a material, adverse change in its… financial

condition…." (Agreement, Sections 2(f), 2(n)). On February 22, 2013, CMI moved to compel Chicago Bancorp to provide certain discovery relating to Chicago Bancorp's dissolution and transfer of assets. (Doc. 62). CMI argued that the discovery it sought related to Chicago Bancorp's affirmative defense alleging that CMI breached the implied covenant of good faith and fair dealing in the parties' Agreement—that such discovery is relevant to whether Chicago Bancorp comes before the Court in good faith, which Defendant put at issue by virtue of its affirmative defense.[1]

On March 21, 2013, the Court entered an Order granting in part and denying in part CMI's motion for relief. (Doc. 72). In the Order, the Court directed Chicago Bancorp to produce certain documents, information, and Rule 30(b)(6) testimony, which specifically related to Chicago Bancorp's performance under the Agreement. For example, the Court ordered Chicago Bancorp to provide the following Rule 30(b)(6) deposition testimony:

> **[Compelled Portion of] Topic 23**. If Defendant is dissolved, the dissolution of Defendant, including the date of dissolution, the reasons for dissolution, when, how, and why Defendant made the decision to dissolve, ... any notices of dissolution given to creditors or potential creditors, and Defendant's articles of dissolution.
>
> **Topic 24**. Any direct or indirect purchase or acquisition by any other entity(ies) and/or person(s) of 25% or more of the assets of Defendant ("Transfer"), including the date(s) of any such Transfer, the identity of the current holder(s) of such assets, all transactions by which the assets came to be held by the current holder(s), the identity of any beneficiaries of any such Transfer, the identity of any directors of Defendant who approved or assented to any such Transfer, the identity of any shareholders of Defendant who approved or assented to any such Transfer, the identity of any other persons or entities who approved or assented to such Transfer, and when, how, and why Defendant decided to make any such Transfer.

The Court also ordered Chicago Bancorp to provide documents and information, likewise specifically relating to Chicago Bancorp's performance under the Agreement.

---

[1] *See* **CitiMortgage, Inc. v. Allied Mortgage Group, Inc.**, No. 4:10-CV-1863-JAR, 2012 WL 1554908, *3 (E.D. Mo. May 1, 2012) (citing **Richard Short Oil Co. v. Texaco, Inc.**, 799 F.2d 415, 423 (8th Cir. 1986)).

3

### III. APRIL 29, 2013 DEPOSITION OF STEPHEN CALK

On April 29, 2013, following the Court's March 21, 2013 compel Order, Chicago Bancorp produced its president and founder, Stephen Calk, to testify. Mr. Calk was far from suitably prepared. Among other deficiencies in his testimony, he testified that:

- **He did nothing to prepare for the deposition.**

    *Q. Did you do anything to prepare for your testimony here today?*
    *A.* ***No, I showed up. What do you mean prepared?***
    (Tr. 9:5-7)

- **He did not know why he was there.**

    *Q. My understanding is that you're appearing here today as a corporate representative on behalf of Chicago Bancorp to testify as to certain subjects. Is that your understanding?*
    *A.* ***No.***
    *Q. What is your understanding of why you're here today?*
    *A.* ***I don't know why I'm here today.***
    (Tr. 6:10-18)

- **He did not review the topics.**

    *Q. Have you reviewed the language of topic 23 prior to today?*
    *A.* ***No.***
    *Q. What about topic 24?*
    *A.* ***No.***
    (Tr. 8:11-15)

- **He was not sure if he was aware of the Court Order compelling testimony on these topics.**

    *Q. Are you aware of whether the Court in the lawsuit we just cited required that Chicago Bancorp provide testimony on those two topics? And I will say just for clarification that there is a portion of topic 24 that the court did not require, but otherwise are you aware that the court required testimony on those two topics?*
    *A.* ***I'm not sure.***
    (Tr. 8:16-23)

- **He did not recall who had the idea to dissolve Chicago Bancorp or whether he had the idea.**

    *Q. Whose idea was it to dissolve the company?*
    *A.* ***I don't understand the question.***

4

> *Q. Relatively simple. Who was the person who first raised the possibility of dissolving Chicago Bancorp?*
> **A. I don't recall.**
> *Q. Was it yourself?*
> **A. Asked and answered.**
> *Q. You don't recall if you were the first person to raise it?*
> **A. Asked and answered.**
> *Q. Are you going to answer my question, sir?*
> **A. Are you going to ask me a question that's new?**
> *Q. It is a new question, so I'll ask it one more time. Were you the first person who raised the possibility of dissolving Chicago Bancorp?*
> **A. I don't recall.**
>
> (Tr. 68:20-69:13).

- **He did not recall what notices of the dissolution of Chicago Bancorp were issued other than publication in a local, low-circulation newspaper, the Examiner of Streamwood, Illinois.[2]**

    > *Q. Was notice of the dissolution of Chicago Bancorp published in any publication other than the Examiner of Streamwood?*
    > **A. I don't recall.**
    > (Tr. 95:1-4).

- **He did not recall when—from 2010 to December 28, 2012 (the date Chicago Bancorp executed Articles of Dissolution)—Chicago Bancorp made the decision to dissolve.**

    > *Q. Why did you, as the shareholders managing member, believe that it was in the best interest of the company to wind up, dissolve, and liquidate it?*
    > **A. It's impossible for Chicago Bancorp to continue operations under the current regulatory environment.**
    > *\* \* \**
    > *Q. When did you come to that conclusion?*
    > **A. Prior to the dissolution of the company.**
    > *Q. At what point prior?*
    > **A. At some point prior.**
    > *Q. What was the earlier [sic; earliest] point in time that you came to that belief?*
    > **A. I don't recall.**
    > *Q. 2010?*
    > **A. I don't recall.**
    > *Q. Did you have such a belief in 2010?*
    > **A. I don't recall.**
    > *Q. Did you have that belief in 2011, sir?*
    > **A. Did I have what belief, ma'am?**

---

[2] According to its website, the Examiner of Streamwood is a "local, community" newspaper with a circulation of 7,000. See http://www.examinerpublications.com/index.php?m=1.

*Q. The belief we've been talking about here, the belief that it was in the best interest of the company to wind up, dissolve, and liquidate the company?*

**A. I'm sorry, what is your question?**

*Q. Did you have the belief in 2011 that it was in the best interest of the company to wind up, dissolve, and liquidate the company?*

**A. I don't recall.**

*Q. When in 2012 did you come to that belief?*

**A. I don't recall.**

*\* \* \**

*Q. Can you tell me any specific point in time when you came to the belief that it was in the best interest of the company to wind up, dissolve and liquidate Chicago Bancorp?*

*\* \* \**

**A. Certainly on or before December 28, 2012** *[the date Chicago Bancorp executed Articles of Dissolution].*

(Tr. 52:16-54:17).

- **He did not know the date Chicago Bancorp was dissolved.**

    *Q. The time period during which Chicago Bancorp existed, you told me it started October 19, 1995. My understanding, correct me if I'm wrong, is that it was dissolved in January of 2013, is that right?*

    **A. I'm not sure of the exact date.**
    (Tr. 25:11-15).
    *\* \* \**

    *Q. When was Chicago Bancorp dissolved?*
    **A. I believe at the end of 2012.**
    (Tr. 40:12-13).

- **Stephen Calk's brother, John Calk, or the company's accountant had certain information called for by Topics 23 and 24, but Stephen Calk did not.**

    *Q. Who had responsibility within Chicago Bancorp for making sure that these media notices were appropriately done?*
    **A. You'd have to ask John Calk.**
    *Q. You don't know?*
    **A. No, or I would have answered the question differently.**
    (Tr. 92:6-12).
    *\* \* \**

    *Q. As I indicated before, and you agreed, in terms of financial records for Chicago Bancorp in 2012, we've been told this [U.S. Tax Return] is all there is, this is what we have instead of an audited financial return, so I'm not only entitled, I'm obligated to go through and make a record as to what you do and don't know and that's what I'm trying to do. So just so that I'm clear, if I wanted to ask about*

6

> *[...] any of the other items that are listed in this particular schedule, my understanding is that you don't know the specific information, correct?*
>
> **A. Correct.**
>
> *Q. And where would you go if you wanted to get that information?*
>
> **A. As I stated earlier, I would go to the person who prepared the tax return, and that would be LHW and Associates.**
>
> *Q. Does Chicago Bancorp still have copies of whatever records were provided to LHW and Associates for it to be able to prepare this tax return?*
>
> **A. I don't know of any records that were given to LHW and Associates.**
>
> *Q. Who would know what records were given to them?*
>
> **A. I don't know. Probably the accountant.**
>
> (Tr. 164:4-165:5).
>
> \* \* \*
>
> *Q. If you want today find out who provided information to Chicago Bancorp's accountants for purposes of preparing the 2012 tax return, what would you do to find out?*
>
> **A. I suppose I would ask John Calk.**
>
> (Tr. 150:7-11).

There are many other examples of similar evasive and unprepared testimony on subjects compelled by the Court's March 21 Order. The entire transcript is filed herewith under seal as <u>Exhibit A</u>.

## IV. DISCUSSION

In its March 21, 2013 Order, the Court ordered Chicago Bancorp to provide certain Rule 30(b)(6) testimony. Chicago Bancorp has flaunted the Court's Order by failing to provide a witness who was either knowledgeable or prepared to testify on the compelled subjects for which he was designated. Throughout his deposition, Chicago Bancorp's corporate designee admitted he did nothing to prepare for his deposition, failed to talk to individuals who were knowledgeable, failed to read the Rule 30(b)(6) notice or the topics stated in the Court's Order, and knew nothing about many of the matters CMI inquired into regarding those topics. Chicago Bancorp clearly failed to produce a suitably prepared witness. What is more, Chicago Bancorp's disregard of the Court's Order and the requirements of Rule 30(b)(6) fall squarely within one of the reasons Rule 30(b)(6) was created. The Advisory Committee Notes for the 1970 Amendments to Rule 30(b)(6) state that the Rule "will curb the 'bandying' by which officers or managing agents of a corporation are

7

deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it." The witness Chicago Bancorp tendered to testify on topics compelled by the Court "bandied" on those topics by claiming ignorance of the subjects involved, acknowledging a complete lack of preparation to testify, and passing the buck to others associated with the Defendant (John Calk, the company's accountants, and various other employees) as persons with the knowledge needed to comply with the Court's Order.

Some of the discovery CMI has otherwise obtained helps to establish that Chicago Bancorp lacks the requisite clean hands to allege CMI's bad faith under the parties' Agreement. But Chicago Bancorp's disregard for the Court's March 21 Order—specifically, its failure to provide a suitably prepared corporate designee for deposition—prevents CMI from fully developing the record to which it is entitled under that Order.[3] The Court should impose appropriate sanctions.

## V. CONCLUSION AND REQUESTED SANCTIONS

For the reasons set forth above, the Court should enter an Order (a) holding Chicago Bancorp in contempt of Court; (b) again requiring Chicago Bancorp to produce, at the offices of CMI's counsel in St. Louis, Missouri, a suitably prepared witness to testify to the topics permitted under the Court's March 21, 2013 Order and, if Chicago Bancorp again fails to produce such a witness, striking Chicago Bancorp's affirmative defense alleging CMI's breach of the implied covenant of good faith and fair dealing; (c) granting CMI leave to file supplemental papers in opposition to Chicago Bancorp's motion for partial summary judgment and in support of CMI's forthcoming motion for summary judgment based on further information provided in compliance with the Court's Order; (d) awarding CMI its reasonable attorneys' fees and costs associated with

---

[3] May 10, 2013 is CMI's current deadline to file its motion for summary judgment and its opposition to Chicago Bancorp's motion for summary judgment. The matters as to which Chicago Bancorp's failed to provide testimony, in violation of the Court's March 21 Order, are relevant to issues in both motions—*i.e.*, Chicago Bancorp's own unclean hands preclude Chicago Bancorp from alleging CMI's bad faith.

8

taking the deposition of Stephen Calk on April 29, 2013 and in pursuing the present motion for sanctions; and (e) granting CMI further relief that the Court deems just and proper.

| | |
|---|---|
| May 10, 2013 | **BRYAN CAVE LLP** |
| | By: /s/ Adam S. Hochschild |
| | Louis F. Bonacorsi, #28331MO |
| | lfbonacorsi@bryancave.com |
| | Ketrina G. Bakewell, #33410MO |
| | ketrina.bakewell@bryancave.com |
| | Adam S. Hochschild, #52282MO |
| | adam.hochschild@bryancave.com |
| | 211 North Broadway, Suite 3600 |
| | St. Louis, MO 63102 |
| | (314) 259-2000 |
| | (314) 259-2020 (facsimile) |
| | |
| | *Counsel for Plaintiff CitiMortgage, Inc.* |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 10th day of May, 2013, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which I understand will send notification of such filing to the following:

Daniel S. Hefter
**HEFTER LAW, LTD.**
22 W. Washington
Suite 1500
Chicago, IL 60602
(312) 264-6565 (phone)
(312) 854-8001 (fax)

Mark E. Goodman
Drey A. Cooley
**CAPES, SOKOL, GOODMAN**
**& SARACHAN, P.C.**
7701 Forsyth Blvd.
Twelfth Floor
St. Louis, MO 63105
(314) 505-5430 (phone)
(314) 721-0554 (fax)

/s/ Adam S. Hochschild