UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CITIMORTGAGE, INC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12CV246 CDP |
| | ) | |
| CHICAGO BANCORP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is now before me on plaintiff CitiMortgage Inc.'s motion to

amend its complaint.  CMI alleges that defendant Chicago Bancorp, Inc. became

insolvent, or nearly so, by fraudulently transferring its assets to other entities.

According to CMI, Chicago Bancorp effected these transfers so it would not have

to pay any judgment rendered against it in this case.

As such, CMI seeks to amend its complaint to add three Missouri state law

claims related to the alleged fraudulent transfers.  CMI wishes to bring these

additional counts against the transferee entities, The Federal Saving Bank (FSB)

and National Bancorp Holdings, Inc. (NBH), as well as Chicago Bancorp and its

owners and sole shareholders, Stephen Calk and John Calk.

In addition to the original allegations in this case, that Chicago Bancorp

breached its contract with CMI (Count I), CMI now alleges that Chicago Bancorp,

– 1 –

FSB, NBH, and the Calks conspired to transfer away Chicago Bancorp's assets in order to avoid any judgment awarded to CMI (proposed Count II); that FSB, NBH, Chicago Bancorp, and the Calks are alter egos (proposed Count III); and that FSB is liable as successor for any judgment against Chicago Bancorp (proposed Count IV).

Although the deadline for amending pleadings is long past, I find that CMI acted with diligence in attempting to meet that deadline, and its proposed amendments rely on newly discovered facts.  I also find that permitting the amendment will not lead to undue prejudice to Chicago Bancorp and that the amendments are not futile.  Accordingly, I will grant CMI's motion to amend its complaint.  I will vacate the August 12, 2013 trial date and will set the case for a scheduling conference.  Additionally, because Count I has not been changed in any substantive way, I will not deny as moot the pending motions for summary judgment.  Instead, they remain under submission and I will consider them as being directed at Count I of the amended complaint.

## I.   **Discussion**

As a general rule, leave to amend a party's pleadings should be freely given when justice so requires.  *See* Fed. R. Civ. P. 15(a).  Different considerations apply, however, when a party moves to amend his pleadings after a deadline established in a scheduling order.  In particular, because Fed. R. Civ. P. 16(b)(4)

– 2 –

provides that a scheduling order "may be modified only for good cause and with the judge's consent," the Eighth Circuit Court of Appeals requires parties to show good cause before amending their pleadings if they move to amend after the deadline established in the scheduling order. *See Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008); *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008).

### A.   *Diligence of Party Moving to Amend Pleading*

In considering whether a movant has shown good cause, a district court must first examine the movant's diligence in attempting to meet the requirements of the scheduling order. *Sherman*, 532 F.3d at 716.

In this case, the cut-off date for joining parties and amending the pleadings, which was agreed upon by both parties, was set by case management order for October 15, 2012.  However, the case was not referred to mediation until two months after that date. (*See* Order Referring Case to ADR, July 6, 2012, Doc. No. 17; Order Granting Joint Mot. to Extend ADR Deadline, Dec. 29, 2012, Doc. No. 37.)  CMI contends – and Chicago Bancorp does not refute – that CMI first learned of Chicago Bancorp's dissolution at the mediation, which took place February 11, 2013.  The dissolution itself had not officially taken effect until January 4, 2013, so there would have been no way for CMI to learn of it before the pleading-amendment deadline.

Three days after the unsuccessful mediation, counsel for CMI asked Chicago Bancorp for supplemental responses and documents relating to its dissolution and alleged transfers of assets, which CMI asserted were responsive to previously sent discovery requests.  (*See* Pl.'s Mem. in Support of Mot. to Compel, Ex. 5, Doc. No. 63-5, p. 1.)  After more communication between counsel, Chicago Bancorp declined to respond by February 18, 2013 as requested.  (*Id.*, at pp. 1, 3; *see also* Mem. in Opp. to Mot. to Compel, Doc. No. 64.)

Later that same week, on February 22, 2013, CMI filed a motion to compel responses.  The following week, Chicago Bancorp filed a motion for a protective order, arguing that it should not be required to produce a witness to respond to certain topics listed in CMI's notice of a Rule 30(b)(6) deposition.  The topics to which Chicago Bancorp objected also related to its dissolution and alleged transfers of assets, as well as the types of loans held by Chicago Bancorp.

I granted each party's motion in part on March 21, 2013.  (*See* Order, Doc. No. 72.)  I ordered Chicago Bancorp to respond to certain interrogatories and requests for production relating to its dissolution and alleged transfers of assets.  I also ordered Chicago Bancorp to produce a 30(b)(6) witness who could respond to some of the listed topics but agreed with Chicago Bancorp that it was not required to provide discovery about the loans it currently held.  On March 22, 2013, the day

– 4 –

after I issued my order, CMI deposed John Calk, co-owner of Chicago Bancorp and one of the proposed additional defendants.  (*See* Doc. No. 92-2, p. 1.)

CMI apparently received the responses to the discovery requests I ordered Chicago Bancorp to answer sometime in April.  (*See* Pl.'s Mot. to Amend, Doc. No. 100, ¶ 4.)  On April 29, 2013, CMI deposed Stephen Calk, co-owner and president of Chicago Bancorp and another of the proposed additional defendants.  (*See* Pl.'s Ex. A, Mot. for Sanctions, Doc. No. 95, p. 1.)  CMI contends now that Calk was underprepared and has moved for sanctions against Chicago Bancorp, requesting the costs associated with the deposition.

Although I am not ruling upon that motion now, I find that the time CMI spent deposing the Calks, whose testimony forms part of the basis for its motion to amend, underscores its diligence in bringing the motion as soon as practicable. Less than two weeks passed between Stephen Calk's deposition and the filing of this motion to amend.  Before that, CMI was negotiating with Chicago Bancorp over related discovery issues and awaiting my ruling on its related motion to compel.

CMI's proposed amendments are based on newly discovered facts that were not discovered – and indeed, did not happen – until after the pleading-amendment deadline.  In sum, I find that CMI was diligent in moving to amend.  *See McCormack v. United States*, 4:10CV1068 CAS, 2011 WL 2669447, at *2 (E.D.

Mo. July 7, 2011) (though it was four months after deadline, plaintiff was diligent in moving to amend complaint when proposed amendments were based on late discovery produced by defendant); *Simpson v. Home Depot, Inc.*, 203 F.R.D. 643, 645 (D. Kan. 2001) (where proposed new claims were based on information only discovered after court granted plaintiff's motion to compel, plaintiff was diligent in moving to amend seven months after deadline); *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) (though nine months past deadline, plaintiff's filing of motion to amend "within two months of acquiring the information" underlying proposed new claims was "sufficient to show diligence").

### B.    *Undue Prejudice to Non-Moving Party*

The diligence of the party seeking amendment to its pleading is the "primary measure of good cause." *Sherman*, 532 F.3d at 716 (citing *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)).  But because a party seeking amendment out of time must also satisfy the requirements of Rule 15(a), prejudice to the nonmovant resulting from the amendment "may also be a relevant factor." *Id.* at 717; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, Chicago Bancorp argues that allowing the amendments would cause undue prejudice because it will have to spend time and money defending the new claims; new discovery and motion practice will be required; and the trial – currently set for August 12, 2013 – will be pushed back.  Although permitting the

amendments will probably lead to some new discovery, this is not enough to show

undue prejudice. *See, e.g., Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 525

(8th Cir. 2000) ("adverse party's burden of undertaking discovery, standing alone,"

provides insufficient grounds to deny leave to amend).  In fact, some of the

discovery necessitated by the new claims and parties has already been exchanged.

(*See* Order, March 21, 2013, Doc. No. 72.)

Further, it is undisputed that Chicago Bancorp knew of its own impending

dissolution at least six weeks before it disclosed that information (apparently

reluctantly) to CMI.  In addition, Chicago Bancorp also refused to produce

discovery relating to its dissolution and alleged insolvency until I granted CMI's

motion to compel.  The fact that CMI's new claims were delayed by Chicago

Bancorp's own late actions weighs against a finding of prejudice.  *See Bell v.

Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998).   I find that allowing

CMI's proposed amendments will not unduly prejudice Chicago Bancorp.

### C.      *Futility of Proposed Amendments*

In addition to its other arguments against the proposed amendments,

Chicago Bancorp contends that they would be futile for two different reasons.

### a.      Chicago Bancorp's Net Worth

First, Chicago Bancorp argues that its net worth, as of May 23, 2013, makes

the proposed amendments futile because "the essential premise of the proposed

new claims is that Chicago Bancorp's net worth is insufficient to satisfy CMI's claim against Chicago Bancorp." This argument misses the point. Futility is a measure of the legal sufficiency of a proposed claim. *See, e.g., Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). The fact that Chicago Bancorp had assets on a certain date to cover a judgment rendered against it does not render futile the proposed claims or the addition of the proposed defendants. At best, Chicago Bancorp's net worth after the fraudulent transfers are alleged to have occurred is a piece of evidence Chicago Bancorp might use at some later stage in the case.

As a corollary, Chicago Bancorp argues that the proposed amendments are "unnecessary" because CMI could enforce any judgment in post-judgment proceedings "just as efficiently and effectively." Except as a possible indication of undue prejudice – which is absent in this case – the existence of alternate proceedings is not grounds to deny a motion to amend under either Rule 15 or Rule 16. *See, e.g., United States ex rel. Knight v. Reliant Hospice, Inc.*, 3:08CV3724, 2011 WL 1321584, at *4–*5 (D.S.C. April 4, 2011) (granting plaintiff's motion to add veil-piercing claim while noting that plaintiff could have chosen to bring post-judgment proceedings instead).

### b.  **Personal Jurisdiction Over Proposed Defendants**

Chicago Bancorp also argues that this court lacks personal jurisdiction over the proposed defendants, who are all nonresidents.  Therefore, Chicago Bancorp contends, attempting to add them as defendants would be futile.

The Eighth Circuit has held that, at this stage, a plaintiff need only make a prima facie showing of jurisdiction.  *See Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir.1991) ("Jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing.").  CMI has made the requisite showing of personal jurisdiction over the proposed nonresident defendants.

### i.  *Long-Arm Statute*

Two conditions must be satisfied before a federal court may exercise personal jurisdiction over a nonresident defendant.  First, the forum state's long-arm statute must be satisfied.  *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011).  Second, the court must determine whether the defendant has sufficient contacts with the forum state to comport with due process.  *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010).

Missouri's long-arm statute provides for personal jurisdiction over any person or firm who commits a tort within Missouri, *see* Mo. Rev. Stat. § 506.500.1(3), and covers "extraterritorial acts that yield consequences in

– 9 –

Missouri." *Furminator v. Wahba*, 4:10CV1941 AGF, 2011 WL 3847390, at *2 (E.D. Mo. Aug. 29, 2011) (quoting *Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 232 (Mo. banc 2010)).  CMI has alleged facts showing Chicago Bancorp's actions led to consequences within the state, including perpetuation of fraud against CMI, a Missouri resident.  Therefore, the Missouri long-arm statute is satisfied.  *See Longshore v. Norville*, 93 S.W.3d 746, 752 (Mo. Ct. App. 2002) (nonresident defendant allowed his divorced daughter to use his address to collect maintenance payments from her ex-husband, though defendant knew she was not entitled to receive them, and though actions were extraterritorial, they satisfied long-arm statute because they defrauded Missouri resident and Missouri state court); *Stucky v. Health Care Prods., Inc.*, 90CV1562, 1992 WL 124832, at *2 (D. Kan. May 26, 1992) (applying Kansas long-arm statute, court had personal jurisdiction over nonresident shareholders of corporation where corporation did business in Kansas and plaintiff alleged shareholders were alter egos of corporation and had used "the corporate entity in promoting injustice or fraud").

### ii.   *Minimum Contacts*

Satisfaction of a forum state's long-arm statute alone is insufficient to convey personal jurisdiction.  Before exercising jurisdiction over a nonresident defendant, a court must also determine whether a defendant has sufficient contacts with the forum state to comport with due process.  These contacts can take many

forms, but they must include "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (internal quotation marks omitted).

The Eighth Circuit has established a five-factor test to determine the sufficiency of a nonresident defendant's contacts with the forum state.  The five factors are: (1) the nature and quality of contacts with the forum state; (2) the quantity of the contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties.  *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004).  The first three factors are most important.  *Id.*

In certain circumstances, due process permits a forum state to assert personal jurisdiction over a nonresident based on an extraterritorial tort that caused effects in the forum state.  *Calder v. Jones*, 465 U.S. 783, 791 (1984); *Johnson*, 614 F.3d at 796 (this is known as the "*Calder* effects test").  To conform to due process, a state may only claim personal jurisdiction based on an extraterritorial tort if the tortious act was (1) "intentional"; (2) "uniquely or expressly aimed at the forum state"; and which (3) "caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—in the forum state."  *Viasystems*, 646 F.3d at 594 (internal quotation marks and brackets omitted).

Here, CMI alleges that Chicago Bancorp, along with the proposed defendants, intentionally and fraudulently transferred Chicago Bancorp's assets to FSB. CMI alleges that the asset transfers occurred after Chicago Bancorp had been threatened with suit and that they were effected for the purpose of rendering Chicago Bancorp judgment-proof in this case. CMI also alleges that FSB took up where the dissolved Chicago Bancorp left off, continuing its business of mortgage loan origination in the same locations, with the same employees, and using the same assets.

This is more than enough to satisfy the *Calder* effects test, especially in the context of a motion to amend the complaint. *See Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 230 (E.D. Pa. 2012). Taking CMI's factual allegations as true, the transfers were expressly aimed at defrauding CMI – a Missouri citizen – and specifically intended to undermine this lawsuit. Though extraterritorial, the alleged transfers were targeted uniquely at Missouri. The nature and quality of these contacts, as well as their direct relationship to this action, demonstrate an intimate "relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). They constitute sufficient contacts with Missouri to meet the demands of due process. *See Longshore*, 93 S.W.3d at 753; *see also Bryant*, 310 S.W.3d at 232–33 (citing *Int'l Shoe Co. v. Washington*, 326

– 12 –

U.S. 310, 318 (1945) and noting that a single fraudulent act can convey personal jurisdiction over a nonresident defendant in a suit related to that act).

## II.  <u>Conclusion</u>

Based on the foregoing,

**IT IS HEREBY ORDERED** that plaintiff CitiMortgage, Inc.'s motion for leave to add parties and file first amended complaint [#100] is granted and the proposed amended complaint is deemed filed as of today.  Plaintiff is reminded of its obligation to promptly effect service on the newly added defendants.

**IT IS FURTHER ORDERED** that the pending motions for summary judgment are deemed addressed to Count I of the amended complaint and remain under submission.

**IT IS FINALLY ORDERED** that the August 12, 2013 trial date and the deadline for filing pretrial submissions are vacated, and no later than **July 22, 2013**, the parties shall file a new joint scheduling plan with their proposal for the remaining deadlines in this case.  The court will hold a telephone conference to discuss all remaining scheduling issues on **Tuesday, July 30, 2013 at 9:00 a.m.** Counsel for the plaintiff is responsible for placing the call and having all parties on the line before contacting my chambers at 314-244-7520.

_Catherine D. Perry_
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of July, 2013.

– 13 –