UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CITIMORTGAGE, INC., | ) |
|      Plaintiff, | ) |
| vs. | ) Case No. 4:12 CV 246 CDP |
| CHICAGO BANCORP, INC., et al., | ) |
|      Defendants. | ) |

# MEMORANDUM AND ORDER

Pending before me is defendant Chicago Bancorp's motion for reconsideration of one portion of my March 31, 2014 memorandum and order. In that order, I granted partial summary judgment to plaintiff CMI and denied Chicago Bancorp's cross motion for summary judgment.

The facts are set out in my earlier order, and I will not recount them here in any detail. In brief, CMI sued Chicago Bancorp for breach of contract over 11 mortgage loans sold by Chicago Bancorp to CMI. Under the terms of an agreement between the two parties, Chicago Bancorp was required to buy back any loan that CMI determined was defective. Chicago Bancorp contends that the Court erred in ruling that Chicago Bancorp was required to repurchase one of the loans, called the Wade loan. It argues that a proper reading of the governing agreement shows that the loan was not defective. Further, it maintains that it (and not CMI) was entitled

to summary judgment on the loan because CMI could not have determined in good faith that the loan was defective.

After careful reconsideration of the relevant materials in the record, I find that Chicago Bancorp still has not demonstrated that it is entitled to summary judgment because issues of fact remain about CMI's good or bad faith. Nonetheless, I am convinced that my earlier interpretation of the governing provision was incorrect. Accordingly, I will grant in part Chicago Bancorp's motion for reconsideration and vacate the portion of my order granting CMI summary judgment on the Wade loan.

**I.** **Standard for Motion for Reconsideration**

Under Rule 54(b), Fed. R. Civ. P., an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and responsibilities." Rule 54(b) "governs reconsideration of orders that do not constitute final judgments in a case." *Singh v. George Washington Univ.*, 383 F.Supp.2d 99, 101 (D.D.C. 2005). Orders granting summary judgment are interlocutory in nature, and they may be reconsidered and revised up until the time a final judgment is entered. *Wells' Dairy Inc. v. Travelers Indem. Co. of Ill.*, 336 F.Supp.2d 906, 909 (N.D. Iowa 2004); *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 434 F.Supp.2d 640, 647 (N.D. Iowa 2006).

District courts have substantial discretion in deciding whether to reconsider an interlocutory order under Rule 54(b). *Wells' Dairy*, 336 F.Supp.2d at 909; *Ideal Instruments*, 434 F.Supp.2d at 647. A court may reconsider an interlocutory order to "correct any clearly or manifestly erroneous findings of fact or conclusions of law." *Jones v. Casey's Gen. Stores*, 551 F.Supp.2d 848, 854 (S.D. Iowa 2008) (internal quotation marks omitted).

Although parties are not generally allowed to raise new legal arguments that they could have raised earlier, reconsideration may be granted "as justice requires." *Singh*, 383 F.Supp.2d at 101. The decision to reconsider a judgment or interlocutory order is one grounded in equity, and should be used to "prevent the judgment from becoming a vehicle of injustice." *Harley v. Zoesch*, 413 F.3d 866, 870 (8th Cir. 2005) (considering a motion for reconsideration of a final judgment brought under Rule 60(b), Fed. R. Civ. P.); *see also Wells' Dairy*, 336 F.Supp.2d at 909 (standard under Rule 54(b) is "typically held to be less exacting" than standards for motions brought under Rules 59(e) or 60(b)).

## II. <u>Earlier ruling on the Wade loan</u>

Chicago Bancorp requests that I revisit the portion of my order relating to the Wade loan. In my previous order, I granted summary judgment to CMI on this loan. I found that CMI had shown that it had determined that the Wade loan was

originated in violation of the Agreement between the parties, and Chicago Bancorp was contractually required to repurchase it.

Under the Agreement, CMI agreed to purchase a loan made to a borrower like Wade[1] only if he contributed at least $500 of his own funds at closing. I found earlier that the Agreement required the $500 contribution to be verified in one of two specified ways. If the contribution was not properly verified, the loan was originated in violation of the Agreement, and CMI was permitted to demand repurchase by Chicago Bancorp.

Chicago Bancorp previously submitted evidence supporting its contention that Wade made the required $500 contribution. It argued that the verification requirement was either met or did not apply. It also argued that CMI should not be permitted to recover on the basis of lack of verification because its letters of demand to Chicago Bancorp had only questioned whether Wade had made a $500 contribution at all, not whether the contribution was properly verified.

In my earlier order, I concluded that the verification requirement did apply, and CMI had permissibly determined it had not been met. As such, I did not consider whether the HUD-1 settlement statement or other submitted evidence showed that Wade contributed at least $500 of his own funds; since the contribution was not verified through one of the ways enumerated by the Agreement, the loan

---

[1] See the earlier order (Doc. 203) for a description of the mortgage loan program governing borrowers like Wade.

was defective and subject to repurchase. I also rejected Chicago Bancorp's secondary argument. I concluded that both theories of recovery – whether Wade had paid $500 of his own money at closing and whether that payment was verified under the terms of the Agreement – were within the scope of CMI's complaint.

### III. Chicago Bancorp's motion for reconsideration

Chicago Bancorp makes two arguments in favor of reconsideration of my earlier order granting CMI summary judgment on the Wade loan.

#### A. *Hazard insurance payment*

First, Chicago Bancorp argues now that Wade used his own funds to pay for one year of hazard insurance coverage. According to Chicago Bancorp, the insurance premium was $820.80, and therefore it separately satisfies the requirement that Wade contribute $500 of his own funds.

But Chicago Bancorp did not offer (and has not offered now) any evidence that Wade paid the hazard insurance premium himself. The HUD-1 settlement statement is not sufficient on its own because it does not identify the source of funds for borrower contributions. It is undisputed that only certain sources for the $500 contribution provision are acceptable under the governing CMI Manual. (*See, e.g.*, Ex. O5, Doc. 99-134, Fannie Mae Underwriting Findings, CMI/CHICAGO001893, ¶ 11 ("verify the borrower is contributing at least $500 of their own funds or 3 percent from allowable Flexible mortgage sources to the down

payment, closing costs, or prepaid fees"); Ex. O5, CMI/CHICAGO007446, Program Descriptions for Fannie Mae Flexible Mortgage 97/100, Page 211-6 (listing eligible sources of funds for the borrower's minimum contribution)). Chicago Bancorp's argument that the Agreement does not allow CMI to demand any source verification for hazard insurance premiums is a new theory that I will not address for the first time on a motion to reconsider. *See Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (motions for reconsideration should not "serve as the occasion to tender new legal theories for the first time").

## B.     *Earnest money deposit*

Second, Chicago Bancorp argues that my reading of the verification requirement was incorrect and that Wade's $2,000 earnest money deposit was in fact verified properly.

The verification requirement reads, in full:

> The deposit on the sales contract for the purchase of the security property is an acceptable source of funds for both the down payment and the closing costs. When the deposit is used to make any portion of the borrower's down payment that must come from his or her own funds, the source of funds for the deposit must be verified. The receipt of the deposit generally should be verified by a photocopy of the borrower's canceled check, although a written statement from the holder of the deposit is acceptable.
>
> The source of funds for the deposit may be verified by either a bank statement or a *Request for Verification of Deposit* (Form 1006 or 1006(S)) that indicates that the average balance for the past two months was large enough to include the amount of the deposit. If the deposit check has cleared

– 6 –

the bank account, the bank statement should cover the period up to (and including) the date the check cleared the bank account.

(Ex. O5, Doc. 99-134, Part X, § 603.01 Deposit on Sales Contract.)

In Chicago Bancorp's view, this provision of the Agreement contains two verification requirements: one to verify the *receipt* of the deposit and one to verify the *source* of the deposit. Upon reconsideration, I agree. This is the plain meaning of the words used. *Cmty. Fed. Sav. & Loan Ass'n of Overland v. Gen. Cas. Co. of Am.*, 274 F.2d 620, 624 (8th Cir. 1960) ("Unequivocal language in written contracts must be given its plain meaning and enforced as written."). Conflating the two requirements was a manifestly erroneous conclusion of law and is therefore a proper basis for reconsideration. *Jones*, 551 F.Supp.2d at 854.

CMI objects to Chicago Bancorp's interpretation, but its arguments are unpersuasive. CMI relies on the policy rationale supporting the verification requirement, rather than the text itself. When the text of a contract is plain, there is no need to go beyond its explicit instruction. *See Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220, 226–27 (Mo. banc 2013) ("When the language of a contract is clear and unambiguous, the intent of the parties will be gathered from the contract alone, and a court will not resort to a construction where the intent of the parties is expressed in clear and unambiguous language.").

Chicago Bancorp previously submitted both a written statement from the holder of the earnest money deposit (Charles Rutenberg Realty) and a Request for

Verification of Deposit that covers the period up to and including the date Wade's cashier's check was drawn. (See Doc. 120-2, Sub-Exhs. 5–7.) It also submitted an affidavit from John Calk, its former president, averring generally that Chicago Bancorp sent a complete loan file (including verification documents it had in its possession) to CMI for each loan it sold. (*See* Calk Aff. July 2013, Doc. 157-1, ¶ 3.) Calk averred that its retained copy of the Wade loan PDF file it sent to CMI contains the verification documents. (*See id.*, ¶ 5; Calk Aff. May 2013, Doc. 120-1, ¶¶ 6–8.) In light of the proper reading of the applicable guideline, these documents show that the Wade loan was not defective.

Nonetheless, Chicago Bancorp is not entitled to summary judgment on this loan. The Agreement did not provide for repurchase of defective loans but rather loans CMI *determined* were defective. Missouri law implies an obligation into every contract to make such discretionary determinations in good faith. But as I ruled earlier, to defeat summary judgment for CMI, Chicago Bancorp bears the burden of showing CMI's determination was made in bad faith. Chicago Bancorp previously pointed out that CMI's letters to Chicago Bancorp about supposed defects in the Wade loan do not specifically reference concern about the lack of verification. Although this did not prohibit CMI from bringing a breach of contract claim based on the lack of verification (as Chicago Bancorp continues to argue), I agree that it is some evidence of bad faith when taken with the fact that the Wade

– 8 –

loan is not defective. There remains, therefore, a question of fact about whether CMI had a good-faith belief that the Wade loan was defective.

## III. Conclusion

Chicago Bancorp has demonstrated that my interpretation of the governing contractual provision merits reconsideration. Upon review of that provision, I am convinced that it was error to grant summary judgment to CMI on the Wade loan.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Chicago Bancorp's motion for reconsideration of summary judgment ruling with respect to the Wade loan [#204] is granted in part. The portion of my order dated March 31, 2014 granting CMI summary judgment on the Wade loan is vacated. The portions of the March 31, 2014 order relating to the McDonald loan and to the issue of damages shall be read in accordance with the instant order.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file a surreply [#209] is granted.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 8th day of September, 2014.